Town of Mechanicsville, a municipal corporation, appellee,
v. State Appeal Board (members), defendants, and
Mrs. Helen Simpson et al., intervenors-
appellants.

No. 50486.

518

October 17, 1961.

Rehearing Denied February 5, 1962.

Rees, Remley & Heiserman and James T. Remley, all of Anamosa, for intervenors-appellants.

Sebesta & Kuehnle, of Mechanicsville, and Brunk, Janss & Dreher, of Des Moines, for appellee.

Evan L. Hultman, Attorney General, Oscar Strauss and Wilbur Bump, Assistant Attorneys General, for State Appeal Board and its members, defendants not appearing.

Garfield, C. J.—The question presented is whether, as the district court held, the State Appeal Board (herein called "board") exceeded its jurisdiction in disapproving proposed street improvements in plaintiff, Town of Mechanicsville. From decree annulling the board's decision certain taxpayers in the town who intervened in the certiorari action in the district court have appealed to us.

A resolution of necessity was introduced in the Mechanicsville town council providing for paving many of its streets, together with curb and gutter and storm sewer. It provided that so much of the cost of the improvements as can under the law be assessed to abutting and adjacent property will be so assessed. Any deficiency between the amount which may be so assessed and the cost of the improvements is to be paid from the sale of general obligation bonds.

Objections to the proposal were filed with the council by numerous property owners and taxpayers. The council deleted

about 11 blocks (or perhaps 13) from the paving project, over-ruled the objections and passed the resolution of necessity as thus changed. Subsequently construction was ordered, plans and specifications were adopted and a contract was made with the lowest bidder for $270,323. The other nine bids were from $274,997 to $326,455. The engineer had estimated the cost at $281,165. In addition to the amount of the contract the town has paid, or obligated itself for, other costs, not including attorney fees, which total $20,686, including about $19,550 to engineers.

Prior to the opening of the bids the council heard and overruled objections to the plans, specifications and form of contract. Within proper time some of the objectors appealed from the council's decision to the State Appeal Board, purporting to act under chapter 23, Code, 1958 (section 23.4). Pursuant to notice given by the board it held a hearing at Mechanicsville on April 19, 1961.

The board found "the proposed method of financing the improvement results in inequitable, excessive and unlawful burdens upon the benefited property and, therefore, is not in the best interests of the town and the taxpayers therein." The board held the improvement as planned should not be completed or approved, the appeal of the objectors was sustained and their objections upheld in part.

The town then brought this action in certiorari to annul the board's decision as in excess of its jurisdiction. As indicated at the outset, five of the objecting taxpayers intervened in the action on the side of defendant board. The case was submitted largely on the records and files of the town. Some oral evidence was taken, mainly in an effort to show the town questioned the board's jurisdiction prior to the hearing at Mechanicsville. The district court held the proceedings and contract for the improvements in question are entirely outside the purview and purpose of chapter 23, Code, 1958 and, as stated, that the board exceeded its jurisdiction in disapproving them.

The town's petition in certiorari alleges, in substance, the

board was without jurisdiction to render its decision and it should be set aside for these reasons:

1) The board has no jurisdiction of a street improvement project to be paid for by special assessments against benefited property, the remedy of any objector being to appeal to the district court under Code section 391.88.

2) The question whether a public improvement to be paid for by special assessments is to be made is a legislative one within the exclusive province of the town council and is not subject to review by the board.

3) The matter of alleged excessive cost to the property owners of this special assessment project is within the exclusive province of the district court pursuant to timely appeal under Code sections 391.88–391.91.

4) The provisions of chapter 408, Codes 1946 and 1950, authorizing appeals to the board in matters relating to issuance of bonds thereunder were repealed by chapter 194, Acts of Fifty-fifth General Assembly, in 1953, and cities and towns were authorized to issue the general obligation bonds it proposes to issue.

5) The alleged detriment to the benefited property is not a legally sufficient ground upon which to base the board's disapproval of these improvements.

The single error intervenors-appellants assign here is that the court erred in holding the board did not have jurisdiction of the controversy.

I. Appellants concede the board is without jurisdiction to disapprove a contract for a street improvement to be paid for wholly by special assessments against adjacent property. In turn the town concedes that if this entire improvement were to be financed by general obligation bonds the board would have jurisdiction to disapprove the contract.

The town proposes to pay for this improvement in large part by special assessments but a substantial part of the cost is to be paid by the sale of general obligation bonds. The town says this part will not exceed $62,729. Appellants claim the amount is somewhat larger. In any event at least 20% of the total cost will be paid by funds of the town. The amount to

be so paid is about three fourths of the legal limit of five per cent (which totals $84,691) for which the town could become indebted. Iowa Constitution, Article XI, section 3; Code section 407.2.

We think Code chapter 23 confers upon the board jurisdiction to disapprove such a contract as we have here, to be paid for in substantial part by funds of the town.

Section 23.1 provides: "The words 'public improvement' as used in this chapter shall mean any building or other construction work to be paid for in whole or in part by the use of funds of any municipality."

The town's position as indicated in its certiorari petition and its concession above referred to ignores the words "or in part" found in the statute. We cannot read these words out of the law. A cardinal rule of statutory construction is that, if reasonably possible, effect should be given every part of a statute. Ashby v. School Township of Liberty, 250 Iowa 1201, 1213–1215, 98 N.W.2d 848, 858, and citations. See also Iowa Mutual Tornado Ins. Assn. v. Fischer, 245 Iowa 951, 956, 65 N.W.2d 162, 165, and citations.

Other provisions of chapter 23 are that before a municipality shall enter into a contract for a public improvement to cost $5000 or more the governing body shall give notice of a hearing thereon (section 23.2). Any person interested may file objections to the proposed contract for, or cost of, the improvement which the governing body shall hear and decide (23.3). Interested objectors may appeal from the decision (of the town council here) to the appeal board (23.4).

Section 23.7 provides in part: "* * * The appeal board shall examine, with the aid of competent assistants, the entire record, and if it shall find that the form of contract is suitable for the improvement proposed, that the improvement and the method of providing for payment therefor is for the best interests of the municipality and the taxpayers therein, and that such improvements can be made within the estimates therefor, it shall approve the same. Otherwise, it may reject the same as a whole or, * * *."

Section 23.9 states: "If an appeal is taken, no contract for public improvements shall be valid unless the same is finally approved by the appeal board."

Language in two recent opinions supports our conclusion. In Husson v. City of Oskaloosa, 240 Iowa 681, 689, 37 N.W.2d 310, 315, property owners sought to enjoin the city and contractor from proceeding with proposed street improvements. Cost of one improvement was to be paid through special assessments on adjacent property "to the extent that the law permits, but it developed that approximately one half was to be paid by the city * * *" (page 684 of 240 Iowa). We held injunctive relief against this improvement was properly denied, giving as a reason that the objectors did not object to it before the city council and appeal to the appeal board from the council's action. The opinion (page 689) states: "* * * The appellants did not appear to object to this particular project but served notice on the city officials of the action here reviewed.

"It is shown that no appeal has been taken from the hearing had and action taken by the city council as provided in section 23.4, 1946 Code. This particular section gives interested objectors the right to appeal to an appeal board provided by statute where claimed interested persons are affected. Under the record we hold that the appellants are in no position to now object to the proposed reinforced concrete-paving improvement."

Dingman v. City of Council Bluffs, 249 Iowa 1121, 1132, 90 N.W.2d 742, 750, was an action for declaratory judgment construing chapter 408A, Code, 1954. The principal question was whether general obligation bonds may be issued to pay for a storm sewer and pumping station without approval by the electors at a special election. We held the bonds could be so issued because the statutory provisions for an election were made inapplicable by section 408A.7 to bonds issued in connection with such improvements. The opinion makes this final observation:

"* * * Our conclusion does not have the effect of permitting the city authorities an unrestricted and free hand in establishing such public improvements, for resort to the state appeal board under chapter 23, Code, 1954, is still available to objectors."

The town relies, and the trial court's decision seems to be largely based, upon language in two earlier cases, Carlson v. City of Marshalltown, 212 Iowa 373, 236 N.W. 421, and Schumacher v. City of Clear Lake, 214 Iowa 34, 239 N.W. 71. We think these decisions are not in point.

In the Carlson case there was no "contract for any public improvement to cost five thousand dollars or more" as provided by what is now section 23.2. The contractor "was employed for no definite amount of work and for no definite time" (page 376 of 212 Iowa). Hence what is now chapter 23 did not apply. We see no conflict between the conclusion now reached and this language in the Carlson opinion on which plaintiff relies (page 380 of 212 Iowa): "The law, so far as we are now concerned, is directed to the promotion of economy in the letting of public contracts. The director of the budget is not the supervisor of, or a court of appeal in, the administration of municipal affairs." (The appeal board is successor to the budget director.)

In Schumacher v. City of Clear Lake, supra, 214 Iowa 34, 37, 38, 239 N.W. 71, 72, there was a contract for more than $5000 for curbing and paving but the entire cost, including cost of intersections, was to be levied as special assessments. There were deficits in such assessments caused by reductions and the city paid for replacements of broken curbs and incidentals. In all, $1510.71 was paid from the city's general fund. We held the contract was "entirely outside the purview and purpose of the budget law" and quoted from Carlson v. City of Marshalltown, supra.

The Schumacher opinion goes on to point out that what is now Code chapter 391 adequately provides for accomplishing the purposes of what is now chapter 23 and it would introduce confusion and uncertainty to superimpose the provisions of chapter 23 upon the procedure chapter 391 prescribes. Chapter 391 applies to street improvements and sewers to be paid for by special assessments against adjacent property. Evidently it was thought chapter 23 is not applicable where it is planned to pay the entire cost of the improvement from such assessments even though, due to later developments, a small part of the total cost

is paid from the city's general fund. Here, as stated, the town planned from the outset to pay a substantial part of the cost of these improvements from its funds.

II. As previously explained, the board found "the proposed method of financing the improvement results in inequitable, excessive and unlawful burdens upon the benefited property and, therefore, is not in the best interests of the town and the taxpayers therein." The board went on to hold the improvement should not be approved. The town argues that if the board had jurisdiction to act under chapter 23 (which it denies), the chapter confers no authority to render a decision on the grounds chosen by the board.

■ Under section 23.7, heretofore quoted from, the board's approval of the contract is conditioned upon its finding in part, "that the improvement and the method of providing for payment therefor is for the best interests of the municipality and the taxpayers therein." The board's adverse finding on this point is a statutory ground for disapproval of the contract. The town's argument, however, is that the reason given for the finding is insufficient.

The argument might be accepted if the words "benefited property" in the language first above quoted were limited to property subject to special assessment adjacent to the improvement. But we think these words are not necessarily so limited. Presumably property not so assessed which would be taxed to help pay the general obligation bonds would also be benefited by the improvement and may properly be referred to as "benefited property."

■■ In any event, the board's assignment of the quoted reason for its holding as to the best interests of the town and its taxpayers does not entitle the town to relief in certiorari. It is at best a wrong reason for the board's decision. It is well settled that a court decision which is proper on any ground shown by the record will not be disturbed even on appeal, rather than in certiorari, merely because the decision is based on an unsound or erroneous reason. As frequently said, many a learned court is occasionally right for a wrong reason. This

rule is more frequently applied in equity cases but it has also been followed in law *and certiorari*. The board's decision should not be subjected to a more severe test than is applied to a court decision.

See in support of what is just said, Wilkinson v. County Board of Education, 251 Iowa 876, 879, 102 N.W.2d 924, 926, and citation (certiorari); In re Will of Smith, 245 Iowa 38, 46, 60 N.W.2d 866, 871, and citation; Ruble v. Carr, 244 Iowa 990, 999, 59 N.W.2d 228, 233, and citations; Richman v. Board of Supervisors, 70 Iowa 627, 632, 26 N.W. 24 (certiorari); 5 C. J. S., Appeal and Error, section 1464(1), pages 657–659; 3 Am. Jur., Appeal and Error, section 825, page 367.

Further, as we have intimated, the point now considered is not more than an error or irregularity which does not go to the board's jurisdiction and is not reviewable by certiorari. See in this connection Massey v. City Council, 239 Iowa 527, 535, 31 N.W.2d 875, 880; Jacobs v. City of Chariton, 245 Iowa 1378, 1392, 65 N.W.2d 561, 568.

III. The town argues that the board, composed of the state auditor, treasurer and comptroller who are executive officers, is precluded by Article III of the state Constitution from exercising any function other than executive. And we are told that in assuming to review the action of the town council the board acted partly in a judicial capacity and partly in a legislative one. The town's argument also says however, "We do not seek to have chapter 23 declared unconstitutional. We merely seek to have it construed in the light of constitutional limitations in order that the admittedly constitutional provisions of chapter 391 be given effect."

As stated, chapter 391 applies to street improvements and sewers to be financed by special assessments against adjacent property. And sections 391.88–391.91 provide for appeal to the district court from the levy of such assessments by any person affected thereby and for the procedure governing such appeals. Appellants concede, as previously stated, that chapter 23 has no application to improvements to be wholly paid for by special assessments. They are not public improvements as defined by 23.1.

The contention now made was not made—certainly not clearly—in the town's petition in certiorari in the district court. It contains no reference to any constitutional provision. We might therefore decline to consider the contention on the ground it is first raised here. However, we think the court's judgment cannot be upheld on the theory now advanced.

■■ It is true that where a statute is fairly open to two constructions, one of which will render it constitutional and the other unconstitutional or of doubtful constitutionality, the construction upon which it may be upheld should be adopted. The rule does not apply here because, so far as applicability of chapter 23 to a street improvement to be paid for in part by funds of the town is concerned, the statute is not fairly open to two constructions. In order to save a statute from unconstitutionality or free it from grave doubts thereof, courts will not read words out of the statute or otherwise amend it.

See in support of the views just stated New York Life Insurance Co. v. Burbank, 209 Iowa 199, 208, 216 N.W. 742, 746, and citation; Eysink v. Board of Supervisors, 229 Iowa 1240, 1246, 296 N.W. 376, 379; Phillips Petroleum Co. v. Nelson, 232 Iowa 246, 253, 5 N.W.2d 1, 4; 16 C. J. S., Constitutional Law, section 98b, pages 385, 386.

■ It is to be kept in mind the town does not directly attack chapter 23 as unconstitutional and we are not called upon to render an opinion on that point. An important constitutional question should not be considered except when necessarily involved and then only upon the fullest investigation and argument. New York Life Ins. Co. and Eysink cases, supra, last above.

■ IV. The town contends that because provisions of chapter 408, Codes, 1946 and 1950, including those authorizing appeals to the board in matters relating to issuance of bonds thereunder, were repealed by chapter 194, Acts of Fifty-fifth General Assembly, in 1953, and cities and towns were then authorized to issue general obligation bonds for street improvements, there is now no statutory authority for the board's action here. The town's concession previously referred to, that if this entire improvement were to be financed by general obligation

bonds the board would have jurisdiction to disapprove the contract, seems quite inconsistent with this contention.

It is true sections 408.10–408.14, and 408.16, Codes, 1946 and 1950, were repealed and what is now section 408.17, Code, 1958, was added to chapter 408 by chapter 194, Acts of Fifty-fifth General Assembly. The repealed section 408.10 provided for issuance of bonds to anticipate collection of taxes to be levied for several funds, including that for paving roadways. The repealed section 408.11 provided for notice of a hearing on such proposed issuing of bonds and appeal to the appeal board from the council's favorable decision thereon. New section 408.17 authorizes cities and towns to issue general obligation bonds to pay the cost of street improvements and contains no provision for notice, a hearing or appeal to the board.

Nothing in chapter 194, 55th G. A., purports to repeal anything in Code chapter 23. As we have explained, section 23.3 provides that any person interested may file objections with the governing body of a municipality to the proposed contract for, or cost of, a public improvement (to be paid for in whole or in part by funds of the municipality). And section 23.4 authorizes appeal to the board from the decision of the governing body. It was under this statute that this appeal to the board was taken from the town council's overruling of objections to the contract for and cost of the improvement.

The town's contention as to the effect of chapter 194, 55th G. A., is in reality that it repeals by implication the above provisions of chapter 23. We cannot so hold. It is fundamental that repeals by implication are not favored by the courts and will not be upheld unless the intent to repeal clearly and unmistakably appears from the language used and such holding is absolutely necessary. The general rule is that if by any fair and reasonable construction prior and later statutes can be reconciled both shall stand. The rule that repeals by implication are not favored has special application to important public statutes of long standing. Yarn v. City of Des Moines, 243 Iowa 991, 997, 54 N.W.2d 439, 442, and citations; Board of Park Commissioners v. Marshalltown, 244 Iowa 844, 850, 58 N.W.2d 394, 397; Smaha v. Simmons, 245 Iowa 163, 168, 169,

60 N.W.2d 100, 103; In re Estate of Klug, 251 Iowa 1128, 1134, 104 N.W.2d 600, 604.

What is now chapter 23 has been in effect, with some changes not here important, since 1924. Certainly an intent to repeal its provisions under which appellants took their appeal to the board does not appear unmistakably from the language used in chapter 194, 55th G. A. This later statute expressly states it is an Act to repeal the named sections in chapter 408 and add a new section thereto. As said in Smaha v. Simmons, supra, "It is hard to draw an implied legislative intent to repeal an unmentioned law from a statute specifying certain numbered statutes that are amended and repealed."

Nor is a holding there was a repeal necessary. There is no irreconcilable conflict between the provisions of chapter 23 just referred to and chapter 194. The later statute, authorizing issuance of bonds, presupposes there was a valid contract for the improvement, not one the appeal board has held invalid under the authority conferred by sections 23.1–23.9.

Dingman v. City of Council Bluffs, supra, 249 Iowa 1121, 1132, 90 N.W.2d 742, 750, was decided after chapter 194, Acts of Fifty-fifth General Assembly, took effect. It construes provisions of chapter 195 of the same legislature (chapter 408A, Codes, 1954, 1958). Both chapters took effect almost simultaneously. The observation, previously referred to, in the Dingman opinion that resort to the appeal board under chapter 23 was still available to objectors is at least impliedly contrary to the town's contention as to the effect of chapter 194.

V. Part of the town's argument is, in effect, that chapter 23, if it means what we hold it does, is unwise and dire consequences will result from such a holding. As applied to this case both arguments should be addressed to the legislature, not to us. We think sections 23.1–23.9 clearly authorize the board to disapprove this contract. We are therefore not concerned with whether these provisions are unwise or undesirable consequences will result from action taken thereunder. Phillips Petroleum Co. v. Nelson, supra, 232 Iowa 246, 253, 5 N.W.2d 1, 4, and citation; 82 C. J. S., Statutes, section 326;

50 Am. Jur., Statutes, section 380 ("It is not the function of a court * * * to vindicate the wisdom of the law."). See also Dickinson v. Porter, 240 Iowa 393, 399, 35 N.W.2d 66, 71, and citations.

VI. The town's motion to dismiss the appeal to us, ordered submitted with the case, is in two divisions. The first division asks that the entire appeal be dismissed mainly because, it is said, the intervenors-appellants have insufficient interest in the matter in litigation. This division is overruled.

It was agreed at the trial that those whose names are signed to the notice of appeal to the board own property and are taxpayers in the town. They are interested objectors who were entitled to appeal to the board under section 23.4. The board's decision was favorable to them. The objectors are also persons "interested in the subject matter of the litigation, or the success of" the board, defendant in the certiorari action (rule 307, Rules of Civil Procedure). They were therefore entitled to intervene in the certiorari action by joining with defendant board. Rule 75, R. C. P. Intervention is remedial and should be liberally construed. In re Town of Waconia, 248 Iowa 863, 869, 82 N.W.2d 762, 765. See also Wharff v. Wharff, 244 Iowa 496, 56 N.W.2d 1.

Although the board and its members are defendants to the certiorari action their interest in the outcome is largely nominal, like that of any "inferior tribunal" (R. C. P. 306) whose decision is challenged by certiorari. It is the usual practice for the party who succeeds before such tribunal, rather than the tribunal itself, to defend such a challenge. To hold this may not be done might well result in only token defense to many actions in certiorari and render of little value to the litigant a favorable decision of the "tribunal."

It seems not to be contended that if, as we hold, appellants were entitled to intervene in the trial court they were not entitled to appeal to us under R. C. P. 318 from its adverse decision.

Insofar as the appeal was taken on behalf of Joe Cruse, the town's motion to dismiss the appeal by him is sustained. We

understand it is admitted he died before the petition of intervention was filed and no one was substituted for him.

Insofar as the appeal was taken on behalf of unnamed parties the motion to dismiss the appeal is also sustained. Code section 23.4 provides specifically for the appeal to the board and the required signatures to the notice of appeal. Here the notice of appeal to the board was signed by 15 of the 175 objectors before the council. The petition of intervention in the certiorari action was by five of the 15 (including Cruse) but it recited it was for themselves and all other objectors—presumably all 175 of them. The notice of appeal to this court contains a similar recital.

The only showing on the trial as to the interest of the 175 is a stipulation that some of them are property owners and taxpayers in the town. The town moved the trial court to strike from the petition of intervention all reference to unnamed objectors on the ground unnamed persons could not be parties to this action. The motion was overruled "in the interest of expediting a final determination of this matter." In this court the town's motion to dismiss the appeal as to unnamed persons is on grounds similar to those urged in support of its motion to strike in the trial court.

Fleming v. Mershon, 36 Iowa 413, and Yarish v. The Cedar Rapids, I. F. & N.W. Ry. Co., 72 Iowa 556, 558, 34 N.W. 417, seem to support the motion as to unnamed parties. Fleming v. Mershon is disapproved as to another point by Brandirff v. Harrison County, 50 Iowa 164, 167. If the appeal to us may be on behalf of all objectors before the town council, perhaps on the theory the intervention was a class action under R. C. P. 42, we think appellants should have pointed this out. But since they filed no resistance to the motion to dismiss we do not have the benefit of their views.

If this part of the town's motion to dismiss the appeal were not sustained we would be justified in reaching substantially the same result by affirming the judgment as to the unnamed parties on the ground their interest in the matter in litigation was not sufficiently shown on the trial.

Except as the appeal on behalf of Joe Cruse and unnamed parties is dismissed, the judgment is—Reversed.

All JUSTICES concur except BLISS, J., not sitting.